UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| ALLSTATE LIFE INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL GEHRISCH, <br><br> Defendant. | CASE NO. _____ |

## COMPLAINT

Plaintiff Allstate Life Insurance Company ("Allstate"), by and through undersigned counsel, alleges as follows for its Complaint against Defendant Michael Gehrisch ("Defendant"):

## NATURE OF THE ACTION

1. This is an action for injunctive relief, as well as damages, based on breach of contract, trade secret misappropriation in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et. seq.*, and trade secret misappropriation in violation of the Florida Uniform Trade Secrets Act, Fla. Stat. § 688.001, *et seq*.

## THE PARTIES

2. Allstate is an Illinois corporation with its principal place of business located in Northbrook, Illinois.

3. Defendant is a Florida citizen operating his business out of 6900 Daniels Parkway, Suite 7, Fort Myers, Florida 33912.

1

## JURISDICTION AND VENUE

4. The Court has diversity jurisdiction under 28 U.S.C. § 1332(a) because this action and controversy is between citizens of different states and exceeds the sum or value of $75,000.00, exclusive of interest and costs. This Court also has jurisdiction over Allstate's claims brought under the Defend Trade Secrets Act, under 28 U.S.C. § 1331, and this Court has supplemental jurisdiction over Allstate's remaining claims under 28 U.S.C. § 1367.

5. This Court has personal jurisdiction over Defendant because he is a citizen of the state of Florida.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides in this District and a substantial part of the events giving rise to Allstate's claims occurred in this District.

## FACTUAL BACKGROUND

### Allstate's Business and Hiring of Independent Exclusive Financial Specialists

7. Allstate is one the nation's leading providers of insurance and financial products and services to individuals and businesses.

8. In addition to providing these products and services directly, Allstate and its subsidiaries and affiliates appoint independent Exclusive Financial Specialists ("EFS") to sell Allstate products.

9. Allstate rigorously screens its EFSs in order to ensure that they are qualified to represent and sell Allstate products, have the proper tools and facilities to analyze and meet customer needs, and can furnish customers with appropriate solutions.

10. EFSs, including Defendant, are provided training by Allstate once they become EFSs. In that process, they are provided confidential information regarding the products offered by Allstate and business strategies to assist with developing business. EFSs are also provided highly proprietary and confidential information about Allstate's business models and customers in order to assist them in their role as EFSs. This includes confidential information shared with Defendant that he would not have had access to prior to becoming an EFS with Allstate.

11. Allstate expends substantial resources advertising, marketing, and promoting its products. The EFSs benefit directly and indirectly from Allstate's advertising, marketing, and promotional efforts, as well as Allstate's goodwill, reputation, and name recognition. These efforts and expenditures allow the EFSs to develop and cultivate accounts and relationships on behalf of Allstate.

12. Accordingly, Allstate relies heavily upon repeat business and renewals to maintain its competitive advantage. Maintaining goodwill and a solid business reputation with its customers is a critical component of Allstate's success. Indeed, because Allstate's business is a service business, the relationship that each EFS has with Allstate customers is highly dependent on the attention and excellent service given to the customer on an ongoing basis, and the continued trust the customers place in Allstate as a leading provider of such services.

**Protection of Allstate Confidential Information**

13. Allstate and its customers entrust Allstate's EFSs to safeguard and protect their private information, which includes information relating to, among other things, their personal data, date of birth, social security numbers, types of policies, amount of insurance, premium amounts, renewal dates of policies, description and location of assets and property, claims

histories, insurance needs, pricing information, and other insurance coverage information, from unauthorized disclosure. Access to this confidential information regarding Allstate customers was provided to or gained by Defendant because of the promises he made in his "ALLSTATE R3001S Exclusive Agency Agreement" ("Agreement") (An accurate copy is attached as **Exhibit A**). Defendant did not have access to this confidential information about Allstate customers prior to entering into his relationship with Allstate.

14. Allstate protects the information described in paragraph 13 by, among other things: limiting the disclosure and use of this information to only EFSs and the EFSs' employees who need this information to sell Allstate products; educating the EFSs and the EFSs' employees about the requirement and necessity of keeping this information confidential; restricting access to this information by restricting access to computer networks and requiring use of passwords to access the information; and, as discussed above, requiring both EFSs and EFSs' employees to execute written agreements that protect against the misuse and improper disclosure of Allstate confidential information.

15. Consequently, all EFSs under an Agreement, and while performing services under their Agreements, acknowledge that they will have access to Allstate confidential information; promise to not disclose confidential information to anyone not authorized to receive it; and confirm that they will not use confidential information for their own benefit or any improper purpose.

16. EFSs like Defendant agree, upon termination of their employment, to continue treating Allstate confidential information as confidential, to not disclose, either directly or indirectly, Allstate confidential information to any third party, and to immediately return all Allstate confidential information to Allstate.

17. Hence, the information described in paragraph 13 is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business. The time, expense, and effort that have gone into the development of Allstate confidential proprietary information are such that the independent development of identical or comparable materials by competitors of Allstate would be extraordinarily difficult and expensive.

### Defendant's Agreement with Allstate

18. On May 30, 2018, Defendant entered into his EFS Agreement with Allstate. (Ex. A).

19. Upon execution of the Agreement, Defendant became an Allstate EFS and, in that capacity, solicited, sold, and serviced products and services, and other business authorized by Allstate.

20. Defendant's Agreement incorporates the terms and conditions set out in a document titled "Supplement for the R3001 Agreement" ("Supplement"). It also incorporates the "Exclusive Financial Specialist Independent Contractor Manual" ("Manual") and provisions of the "Allstate Agency Standards Manual" ("Standards").

21. Defendant operated as an EFS with Allstate until his resignation on July 31, 2020.

22. As an EFS, Defendant partnered with multiple Allstate Exclusive Agents ("EA") over time to solicit Allstate customers to purchase Allstate financial products.

23. The EAs and Allstate provided Defendant with access to Allstate confidential information, including customer information that would only be available to Defendant through his partnership with EAs.

24. As such, a large number of the Allstate customers Defendant serviced as an EFS were given to him by Allstate and EAs (as opposed to Defendant finding the customers on his own).

### Confidentiality and Non-Solicitation Terms of Defendant's Agreement

25. Consistent with the Agreement, Defendant was authorized to sell and service a variety of Allstate products and Defendant agreed that Allstate "will own all business produced under the terms of [the] Agreement." (Ex. A, ¶ I(A)).

26. Under the Agreement, Defendant acknowledged that the following information is Allstate's "confidential information" and property:

> business plans of the Company; information regarding the names, addresses, and ages of policyholders of the Company; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings and any policyholder information subject to any privacy law; claim information; certain information and material identified by the Company as confidential or information considered a trade secret as provided herein or by law; and any information concerning any matters affecting or relating to the pursuits of the Company that is not otherwise lawfully available to the public.

(Ex. A, ¶ VI(D)).

27. By signing the Agreement, Defendant promised to maintain the confidentiality of Allstate confidential information, to return to Allstate confidential information when Defendant's employment terminated, and not to use Allstate confidential information for any purpose other than Allstate business (Ex. A, ¶¶ IV(B)-(E)).

6

28. Furthermore, Defendant agreed that for a period of one year following the termination of his employment with Allstate, he would not "solicit the purchase of products or services in competition with those sold by [Allstate] . . . from any office or business site located within one mile of the agency sales location." (Ex. A, ¶ XVIII(D)(3)).

29. Accordingly, Defendant agreed that if he breached Paragraphs IV(B)-(E) and XVIII(D)(3), Allstate would be "entitled to an award of reasonable attorneys' fees in the event that Allstate is successful in an application for injunctive relief or in an action based [on breach of contract.]" (Ex. A, ¶ XVIII(F)).

**Defendant Breached his Agreement**

30. On July 31, 2020, Defendant resigned his employment with Allstate, effective immediately.

31. After resigning from Allstate, Defendant opened and began operating Gehrisch Insurance and Financial Services ("Gehrisch Insurance") and selling services and products that directly compete with Allstate products and services.

32. Defendant planned to open and operate Gehrisch Insurance well before resigning from Allstate.

33. Defendant used Allstate confidential information regarding Allstate customers, products, and services to prepare for his departure from Allstate and the future solicitation of Allstate customers on behalf of himself and his new insurance business.

34. On or around August 30, 2020, Allstate learned that Defendant was operating Gehrisch Insurance in the exact same location as his former Allstate agency.

35. Upon information and belief, Defendant solicited Allstate customers and other individuals from his former Allstate agency location using Allstate confidential information that he acquired as an EFS and retained after his resignation.

36. As a result of learning that Defendant was soliciting the purchase of products or services in competition with those sold by Allstate in his former Allstate agency location, on September 1, 2020, Allstate sent correspondence to Defendant reminding him of his confidentiality and non-solicitation obligations, and demanding that Defendant immediately cease operating Gehrisch Insurance from his former Allstate agency location. (An accurate copy of Allstate's September 1, 2020 correspondence to Defendant is attached as **Exhibit B**).

37. However, Defendant did not respond to Allstate's September 1, 2020 correspondence, and instead, continued to solicit customers and compete with Allstate by operating Gehrisch Insurance from his former Allstate agency location.

38. Accordingly, on October 9, 2020, Allstate sent Defendant a second cease and desist letter, once again advising Defendant of his continuing confidentiality and non-solicitation obligations to Allstate and demanding he cease all activities that violate his Agreement with Allstate. (An accurate copy of Allstate's October 9, 2020 correspondence to Defendant is attached as **Exhibit C**).

39. Unfortunately, Defendant refused to cease violating his agreement with Allstate. To the contrary, on October 30, 2020, Defendant admitted, in an email correspondence with Allstate, that he was indeed operating Gehrisch Insurance from the same location of his former Allstate agency. (An accurate copy of the email correspondence from Defendant is attached as **Exhibit D**.)

40. Consequently, on October 30, 2020, Allstate sent Defendant a third and final cease and desist notice, again reminding Defendant of his contractual obligations to Allstate, and again demanding that Defendant immediately cease all activities that violate his Agreement with Allstate. (An accurate copy of Allstate's October 30, 2020 correspondence to Defendant is attached as **Exhibit E**).

41. Regrettably, Defendant continued to breach his Agreement by, among other things: soliciting customers with products and services in direct competition with Allstate from the location of his former Allstate agency and, upon information and belief, retaining and/or using Allstate confidential information for his own benefit and/or the benefit of his new insurance business.

42. As of the date of filing this Complaint, Defendant continues to operate Gehrisch Insurance from the location of his former Allstate agency.

43. Consequently, Allstate has experienced, and continues to experience, customer losses to Defendant and his business based on Defendant's solicitation of Allstate customers from his former Allstate agency site.

44. Allstate also has experienced, and continues to experience, actual and potential customer losses to Defendant and his business based on the improper use and retention of Allstate confidential information.

**Irreparable Harm to Allstate**

45. By violating his Agreement, Defendant is harming Allstate's legitimate business interests by illegally diverting customers and potential customers away from Allstate.

46. Defendant is also harming Allstate's legitimate business interests by soliciting his former Allstate customers with competitive products from his former Allstate agency location.

47. Moreover, Allstate's trade secrets, confidential information, and goodwill are at risk because Defendant is illegally retaining, using, and refusing to return Allstate confidential information and property.

48. Allstate relies on its confidential information and property to service its clients' needs, make sure its clients are satisfied with their respective Allstate services and products, and sell additional products and services.

49. If a competitor like Gehrisch Insurance obtained Allstate's confidential information, the competitor would be able to unfairly compete with Allstate by using this information to contact Allstate's customers and offer competing products and services on terms and conditions designed to undercut Allstate.

50. Injury to Allstate is therefore probable and imminent because, upon information and belief, Defendant intends to continue violating his Agreement by soliciting Allstate customers and using and/or retaining Allstate confidential information without Allstate's authorization or permission.

51. Accordingly, Allstate is suffering irreparable harm and injunctive relief is necessary and appropriate to prevent further damage to Allstate.

## COUNT I
### Breach of Contract

52. Allstate repeats and realleges each and every allegation contained in paragraphs 1 through 51 of this Complaint.

53. On May 30, 2018, Defendant entered into his Agreement with Allstate. (Ex. A.)

54. The Agreement is a valid and enforceable contract.

55. Allstate has performed all duties and obligations it owes Defendant under the Agreement.

56. Under the Agreement, Defendant promised, upon termination of his employment with Allstate, to treat as confidential and not disclose, either directly or indirectly, Allstate confidential information and trade secrets to any third party, and to not use Allstate confidential information and trade secrets for his own benefit or for any improper purpose.

57. Defendant further promised to return all Allstate confidential information and property to Allstate when his employment ended with Allstate.

58. Also under the Agreement, Defendant agreed, for a period of one year following the termination of his employment, he would not solicit the purchase of products or services in competition with those sold by Allstate from any office or business site located within one mile of his former Allstate agency location.

59. The post-termination covenants found in the Agreement are reasonable in scope and duration, and are necessary to protect Allstate's legitimate business interests in its confidential information, goodwill, and longstanding customer relationships.

60. Defendant breached the Agreement, and continues to breach the Agreement by, among other things, soliciting Allstate customers with competing products and services from the site of his former Allstate agency and by refusing to return all property belonging to Allstate.

61. As a direct and proximate result of Defendant's breach of the Agreement, Allstate has incurred significant damage.

62. Defendant's illegal solicitations and actions have caused Allstate to lose customers and potential customers.

63. Defendant's illegal solicitations and actions have also damaged Allstate's goodwill, reputation, and legitimate business interests.

64. Moreover, Defendant's breaches of the Agreement are continuing. Allstate is therefore subject to continuing irreparable harm, economic injury, and damage to its goodwill and business reputation.

65. Allstate has no adequate remedy at law and, unless injunctive relief is granted, Allstate will continue to be irreparably harmed by Defendant's breach of the Agreement in a manner that is not fully compensable by money damages.

66. Therefore, Allstate requests that this Court grant injunctive relief against Defendant that prohibits Defendant from (a) using Allstate confidential information, and (b) soliciting the purchase of products or services in competition with those sold by Allstate from any office or business site located within one mile of his former Allstate agency location, including the present site of Gehrisch Insurance.

67. Allstate further requests that this Court order Defendant to immediately return all Allstate confidential information and property in his custody, possession, or control to Allstate.

## COUNT II

### Violation of the Defend Trade Secrets Act

68. Allstate repeats and realleges paragraphs 1 through 67 of the Complaint.

69. During the course of his relationship with Allstate, Defendant was provided access to substantial amounts of Allstate confidential information and trade secrets.

70. For instance, Defendant had access to Allstate business plans; names, addresses, and ages of policyholders and potential policyholders; types of policies; amounts of insurance; premium accounts; the description and location of insured property; the expiration or renewable dates of policies; policyholder listings; policyholder information that is subject to privacy law; claim information; customer contact information; customer account numbers; and customer account values.

71. This information is not available to the general public and is closely guarded by Allstate. Allstate keeps such information strictly confidential in order to protect its customers' privacy and to maintain a competitive advantage in the highly competitive insurance business.

72. Allstate confidential information, including confidential customer information, is considered a trade secret under the Defend Trade Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA"), because the information is not generally known outside of Allstate's business, the information is not generally known by employees and others involved in Allstate's business, Allstate has taken reasonable measures to guard the secrecy of the information, the information is of great value to Allstate and its competitors, Allstate expended significant amounts of time and money in developing the information, the information cannot easily be acquired or duplicated by others, and because Allstate continues to use the information in its business.

73. Defendant was legally and contractually obligated to return Allstate confidential information to Allstate immediately upon the termination of his employment with Allstate.

74. Defendant, however, upon information and belief, ignored (and continues to ignore) his contractual obligations by retaining Allstate confidential information and using that confidential information to solicit Allstate customers.

75. In violation of Allstate's rights, upon information and belief, Defendant has threatened to misappropriate and/or has misappropriated Allstate's trade secrets and confidential information and, due to the nature of the trade secrets, will inevitably disclose and/or use Allstate's trade secrets and confidential information to injure Allstate.

76. If Defendant's conduct is not remedied and enjoined, upon information and belief, Defendant will disclose and/or use Allstate's confidential and trade secret information for his own benefit and to Allstate's detriment.

77. As a direct and proximate result of Defendant's conduct, Allstate has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

78. Because Allstate's remedy at law is inadequate, Allstate seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

79. Allstate's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will suffer irreparable harm absent injunctive relief.

80. Allstate has been damaged by all the forgoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

## COUNT III

## Violation of the Florida Uniform Trade Secrets Act

81. Allstate repeats and realleges paragraphs 1 through 80 of the Complaint.

82. As detailed above, Allstate owns and possess certain confidential, proprietary, and trade secret information.

83. This confidential, proprietary, and trade secret information relates to products and services sold, products and services intended to be sold, including information regarding the names, addresses, and ages of policyholders or prospective policyholders of Allstate; types of policies; amounts of insurance; premium amounts; the description and location of insured property; the expiration or renewal dates of policies; policyholder listings; policyholder information that is subject to privacy law; claim information; customer contact information; customer account numbers; and customer account values.

84. This information is not available to the general public and Allstate has taken reasonable measures to keep such information secret and confidential.

85. This confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not readily ascertainable through proper means by another person who could obtain economic value from the disclosure or use of the information.

86. Upon information and belief, Defendant has failed to return Allstate's confidential and trade secret information.

87. Upon information and belief, Defendant has threatened to misappropriate and/or has misappropriated Allstate's trade secrets and confidential information and, due to the nature of

the trade secrets, will inevitably disclose and/or use Allstate's trade secrets and confidential information to injure Allstate.

88. If Defendant's conduct is not remedied and enjoined, upon information and belief, Defendant will disclose and/or use Allstate's confidential and trade secret information for his own benefit and to Allstate's detriment.

89. As a direct and proximate result of Defendant's conduct, Allstate has suffered and, if not stopped, will continue to suffer, irreparable injury and significant damages, in an amount to be proven at trial.

90. Because Allstate's remedy at law is inadequate, Allstate seeks, in addition to damages, injunctive relief to recover and protect its confidential, proprietary, and trade secret information and other legitimate business interests.

91. Allstate's business is reliant on its business reputation and its ability to maintain and grow its client base in a competitive market and will suffer irreparable harm absent injunctive relief.

92. Allstate has been damaged by all the forgoing, and is entitled to its damages, in an amount to be determined at trial, as well as an award of exemplary damages and attorneys' fees.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

1. Enter an injunction enjoining and restraining Defendant from soliciting the purchase of products or services in competition with those sold by Allstate from any office or business site located within one mile of his former Allstate agency, including the present site of Gehrisch Insurance;

2.	Enter an injunction enjoining and restraining Defendant from using any Allstate confidential information for his own benefit and from disclosing Allstate confidential information to anyone not authorized to receive the information;

3.	Enter an order requiring Defendant to return all Allstate confidential information in his possession, custody, or control to Allstate;

4.	Enter judgment against Defendant for compensatory damages in an amount to be determined at trial;

5.	Enter judgment against Defendant for punitive damages in an amount to be determined at trial;

6.	Award Allstate the costs and expenses, including the reasonable attorneys' fees, Allstate incurs as a result of Defendant's breach of his Agreement, violations of the Defend Trade Secrets Act, and misappropriation of trade secrets under the Florida Uniform Trade Secrets Act; and

7.	Award Allstate such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Consistent with Rule 38 of the Federal Rules of Civil Procedure, Allstate demands trial by jury in this action.

DATED this 2nd day of February, 2021.

**DINSMORE & SHOHL LLP**

By: /s/ Kelly Eisenlohr-Moul

Kelly Eisenlohr-Moul
(Florida Bar No. 1003246)
1100 Peachtree Street N.E., Suite 950
Atlanta, GA 30309
P: (470) 300-5337
F: (470) 300-5352
kelly.eisenlohr-moul@dinsmore.com

*Counsel for Allstate Life Insurance Company*

## CERTIFICATE OF SERVICE

I certify that on the 2nd day of February, 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of Notice of Electronic Filing.

/s/ Kelly Eisenlohr-Moul
Counsel for Allstate Life Insurance Company

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I, Heather Dougherty, on behalf of Allstate Life Insurance Company, declare under penalty of perjury that the statements in this Complaint for Injunctive and Other Relief are true and correct except where such statements are made upon information and belief.

DATED: this 2nd day of February, 2021.

_____
Heather Dougherty, Financial Sales Director
Allstate Life & Retirement (ALR)